WILLIAM J. EDELMAN (SBN 285177)
wedelman@milberg.com
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Ste 2100
Chicago, IL 60606
Tel: 866-252-0878

ALEXANDER E. WOLF (SBN 299775)
awolf@milberg.com
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 South Beverly Drive, Penthouse
Beverly Hills, California 90212
Tel: 872-365-7060

*ATTORNEY FOR PLAINTIFF AND*
*THE PROPOSED CLASS*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA EOM, KIRSTEN CURLEY, MEGAN TRAMA, and JESIKA BRODISKI, individually and on behalf of all similarly situated persons, | Case No.  2:25-cv-05331 |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| TRELLIS RESEARCH, INC. d/b/a Trellis, a Delaware corporation. | |
| Defendant. | |

Plaintiffs Victoria Eom, Kirsten Curley, Megan Trama, and Jesika Brodiski (collectively, "Plaintiffs") on behalf of themselves and all others similarly situated, bring this class action against Defendant Trellis Research, Inc. d/b/a Trellis ("Trellis" or "Defendant") to stop Defendant's illegal practice of using the names of California, Illinois, and Washington residents without consent to promote its services, and allege on personal knowledge as to themselves, and investigation of counsel and information and belief as to the remainder, as follows:

## I.      NATURE OF THE ACTION

1.      Defendant Trellis operates a website that sells access to a suite of AI-powered litigation tools that draw on Trellis' massive, proprietary database of lawsuit data. Trellis makes money by selling monthly subscriptions to legal professionals who want to use Trellis's AI-powered tools.

2.      Trellis advertises these products and services by displaying millions of entries in its database about individuals previously involved in litigation as search results on popular search platforms like Google and Bing. Thus, if an individual's name is searched on Google and that individual is linked to an entry in Trellis's database, a link to Trellis's website with information about that individual's prior lawsuit is commonly one of the top search results.

3.      But when a user clicks on the link to the Trellis lawsuit preview page providing limited detail about that lawsuit, Trellis does not give or even offer for sale access to details about that particular lawsuit. Instead, Trellis promotes and sells its suite of AI-powered tools at monthly subscription rates ranging from $129.99 to $199. Thus, Trellis does not sell information about the individuals searched – it sells subscriptions to its paid AI tools.

4.      The people like Plaintiffs Victoria Eom, Kirsten Curley, Megan Trama, and Jesika Brodiski appearing in these lawsuit preview page advertisements for Trellis's AI products never gave consent to Trellis to use their identities for Trellis's benefit – and certainly not for commercial advertising purposes.

2

5.      As a result, Trellis's use of individuals full names in its advertisements without consent and for its own commercial benefit violates the California Right of Publicity Statute, Cal. Civ. Code § 3344, *et seq*. California's common law right of publicity, California's common law prohibition against unjust enrichment; the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1, *et seq*; and the Washington Personality Rights Act ("WPRA") RCW § 63.60 *et seq*.

## II.    PARTIES

6.      Plaintiff Victoria Eom is and at all times relevant to this complaint was an individual domiciled in and residing in Los Angeles, California. Plaintiff Eom is a citizen of the State of California.

7.      Plaintiff Kirsten Curley is and at all times relevant to this complaint was an individual domiciled in and residing in Skokie, Illinois. Plaintiff Curley is a citizen of the State of Illinois.

8.      Plaintiff Megan Trama is and at all times relevant to this complaint was an individual domiciled in and residing in San Pedro, California. Plaintiff Trama is a citizen of the State of California.

9.      Plaintiff Jesika Brodiski is and at all times relevant to this complaint was an individual domiciled in and residing in Renton, Washington.  Plaintiff Brodiski is a citizen of the State of Washington.

10.      Defendant Trellis Research, Inc., d/b/a as Trellis, is a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business in Los Angeles, California. Defendant Trellis Research, Inc. is deemed a citizen of both the State of Delaware, where it is incorporated, and the State of California, where it has its principal place of business.

## III.    JURISDICTION AND VENUE

11.      This Court has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which: (i) there are at least 100 class members; (ii) the aggregate amount in controversy exceeds $5,000,000,

exclusive of interest and costs; and (iii) at least one putative class member and one Defendant are citizens of different states.

12.    Personal Jurisdiction: This Court has personal jurisdiction over the parties in this case because Defendant has conducted business within California and has sufficient minimum contacts with California. Defendant is headquartered in California, advertises and sells its products to California residents through its nationwide website, and prominently advertises large California-citizen law firms as prior customers.  The actions giving rise to this complaint occurred within this jurisdiction, and thus establishing personal jurisdiction is consistent with traditional notions of fair play and substantial justice. In addition, exercising jurisdiction is fair, just, and reasonable considering the quality and nature of each Defendant's acts that occur in California and which affect interests located in California. Each Defendant has purposefully availed itself of the privilege of conducting activities in California, and should reasonably anticipate being haled into court in California

13.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.  Trellis is headquartered in this District and therefore its decisions to use identities to promote its products occurred in this District.  In addition, Plaintiffs Eom and Trama reside in this District and Trellis appropriated Plaintiffs' identity while they were residents of this District.

## IV.    GENERAL ALLEGATIONS

14.    Defendant Trellis operates a website that sells access via paid monthly subscriptions to artificial-intelligence (AI)-powered litigation tools for legal professionals. Trellis boasts it has the largest state-level database that "covers 45 stated and 3,335 courts in 2,479 counties" amounting to "hundreds of millions of state court civil litigation

Dockets and Documents from all over the country" underlying its AI-powered litigation tools.[1]

15.    Trellis offers a suite of products and services it describes the "ultimate case roadmap" allowing legal professionals to "gain a thorough analysis of your case, legal issues, jury pool, and strategic recommendations based on insights from similar cases in our extensive database."[2]

16.    Trellis's specific products and services include:

    a.    "TrellisAI," which Trellis describes as "an advanced data and AI platform that revolutionizes how lawyers work while saving valuable time" by using AI to draft arguments, assess a case, recommend defenses, analyze arguments, identify key witnesses, and generate timelines[3];

    b.    "Judge Analytics," which Trellis describes as a providing "deep insights into judicial tendencies, case outcomes, and motion trends"[4] ;

    c.    "Law Firm Litigation Insights," which Trellis describes as a "data-backed overview of a law firm's case history, win rates, clients, and practice area strengths";

    d.    "Corporate Litigation Insights," which Trellis describes as "in-depth analysis of a company's litigation history, patterns, and outcomes to guide legal strategy and risk assessment";

    e.    "Smart Search," which Trellis describes as "an intuitive, AI-powered search that helps to quickly locate relevant cases, documents and rulings";

---

[1] https://trellis.law/search; https://support.trellis.law/what-is-manage-company-users

[2] https://trellis.law/search.  Unless otherwise noted, all quotations in these subparagraphs are from Trellis's website page describing its own products and services at https://trellis.law/features.

[3] *See also* https://trellis.law/trellis-ai.

[4] https://trellis.law/feature/judge-analytics.

f.  "Court Comparison," which Trellis describes as generating an "analytical report display[ing] historical docket data across up to 3 counties, helping you predicts the grant rate of your motion or the likelihood of your preferred case outcome"[5];

g.  "Daily Filings Reports," which Trellis describes as providing "timely updates on new civil litigation filings"[6]; and

h.  "Trellis API Integration," which Trellis describes as "integrating real-time litigation data and insights into your workflows."

17.  Trellis advertises its products and services in part through "search engine optimization" (SEO) techniques aimed at popular search engines like Google and Bing. SEO refers to strategies designed to make a particular website – here, Trellis – appear high on the list of search results when users enter searches into sites like Google and Bing.

18.  Specifically, Trellis has designed its website so that when a search for an individual's name is entered into a search engine like Google or Bing, if that individual's name is linked to one or more of the "hundreds of millions" of lawsuits in Trellis's database, then a link to a Trellis's website summarizing information from Trellis's database about that lawsuit is one of the highest search results.

19.  In so doing, Trellis intentionally uses the identities of real people as advertisements that draw anyone searching for that identity to Trellis's website, where Trellis attempts to sell its subscription-based services.

20.  For example, if a user searches Google for a particular person, and that person was a party in a lawsuit in Trellis's database, one of the most prominent search results is typically a link to Trellis's website containing the name of that lawsuit.

---

[5] https://support.trellis.law/what-is-manage-company-users.

[6] https://trellis.law/feature/daily-filings-report.



21.     When the user clicks that link and visits Trellis's website, the Trellis landing page displays an overview of the information on the docket related to the lawsuit involving the searched-for individual (i.e., a "lawsuit preview page").



22.     If a user on Trellis's website wants to view detailed substantive information about the lawsuit, however, such as the case number, the full docket, or a document

referenced in landing page summary, Trellis forces the user to sign up for a paid monthly subscription.

23.    Specifically, clicking on links to the more detailed information results in the user arriving at a "Signup" page requiring the user to create a user profile.  Once the user creates a profile, the user is taken back to the landing page, which still hides detailed substantive information about the case.  Now, however, if the user clicks on one of the links seeking more detailed information -- such as the case number, or an individual case document, or the full docket -- the user is taken to a subscription signup page.



24.    Trellis's advertised subscriptions come in three tiers.  As advertised by Trellis, the lowest tier is $129.95 per month, which provides "up to 3 Accounts," data for "one state," and "75 Content Views per month."  The next tier is $199.95 per month, which

CLASS ACTION COMPLAINT

additionally provides "Judge Analytics."  The highest tier, which is for law firms or corporations and allows unlimited accounts, all states, and "flexible" Content Views limits, requires contacting a Trellis sales representatives for pricing.  All three tiers are advertised as including a "14 Day Free Trial."[7]

25.    Trellis is not as a practical matter selling access to the details of the advertised lawsuit that brought the user to Trellis's website in the first place.  Trellis does not at this point offer the user the option to download only a particular document referenced in that case for a lower fee, nor an option for access to the details of only the advertised case for a lower fee.  In addition, a moderately complex case could easily involve over 75 underlying docket entries and documents, which would exceed a user's allotted 75 Content Views per month despite the hefty price tag of $129.95/month.

26.    Instead, Trellis's use of individuals' identities to draw users to its website via search results is intended to sell access to Trellis' subscription-based AI litigation tools. In so doing, Trellis misappropriates those identities for its own commercial benefit to promote paid subscriptions to its products and services.

27.    Critically, Trellis never obtained written consent from Plaintiffs and Class Members to use their names or other identifying information for commercial purposes. Indeed, Trellis never obtained any consent at all from Plaintiffs and Class Members to use such information for any purpose.

28.    In addition, Trellis never notified Plaintiffs and Class Members that their names or other identifying information would appear as advertisements on Trellis's website for Trellis's paid services.

29.    Plaintiffs and Class Members have no relationship with Trellis.

30.    Accordingly, Plaintiffs, on behalf of themselves and others similarly situated, bring this action against Defendant for its ongoing violations of the right of publicity laws

---

[7] Trellis defines a "Content View" as "[e]ach time you search, view, download, or print any item on trellis.law."  https://support.trellis.law/whats-included-in-a-cv.

in California and Illinois, and seek (1) injunctive relief requiring Defendant to cease using the identities of these states' residents for commercial purposes (2) the greater of an award of actual damages, including profits derived from the unauthorized use of individuals' names, or statutory damages, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees.

### A.   Plaintiff Eom-Specific Allegations

31.   Plaintiff Victoria Eom discovered that Trellis was using her identity to advertise paid subscriptions to Trellis.

32.   Plaintiff Victoria Eom is also known by the full name Victoria Sangeun Eom Pyo (her married name).

33.   A search of Plaintiff Eom's name on Google resulted in a link to Trellis's website as the first search result. That search result links to a Trellis page with information about a lawsuit Eom was previously involved in.

34.   Trellis's website's page specifically identified Plaintiff Eom by her full name and details about the lawsuit she was involved in such as the location of the lawsuit, the other parties to the lawsuit, the nature of the lawsuit, and the date of the lawsuit.

35.   Plaintiff Eom never gave Trellis written consent – nor consent of any kind -- to use any part of her identity for commercial purposes. Plaintiff Eom never gave Trellis permission to use her identity to promote Trellis's business.

36.   Plaintiff Eom is not and has never been a customer of Trellis, nor does she have any relationship with Trellis at all.

### B.   Plaintiff Curley-Specific Allegations

37.   Plaintiff Kirsten Curley discovered that Trellis was using her identity to advertise paid subscriptions to Trellis.

38.   A search of Plaintiff Curley's name on Bing resulted in a link to Trellis's website as the second search result. That search result links to a Trellis page with information about a lawsuit Curley was previously involved in.

10

39.    Trellis's website's page specifically identified Plaintiff Curley by her full name and details about the lawsuit she was involved in such as the location of the lawsuit, the other parties to the lawsuit, the nature of the lawsuit, and the date of the lawsuit.

40.    Plaintiff Curley never gave Trellis written consent – nor consent of any kind -- to use any part of her identity for commercial purposes.  Plaintiff Curley never gave Trellis permission to use her identity to promote Trellis's business.

41.    Plaintiff Curley is not and has never been a customer of Trellis, nor does she have any relationship with Trellis at all.

**C.    Plaintiff Trama-Specific Allegations**

42.    Plaintiff Megan Trama discovered that Trellis was using her identity to advertise paid subscriptions to Trellis.

43.    A search of Plaintiff Trama's name on Google resulted in a link to Trellis's website as the fifth search result.  A search of Plaintiff Trama's name on Bing resulted in a link to Trellis's website as the second search result.  Both search results link to a Trellis page with information about a lawsuit Trama was previously involved in.

44.    Trellis specifically identified Plaintiff Trama by her full name and details about the lawsuit she was involved in such as the location of the lawsuit, the other parties to the lawsuit, the nature of the lawsuit, and the date of the lawsuit.

45.    Plaintiff Trama never gave Trellis written consent – nor consent of any kind -- to use any part of her identity for commercial purposes.  Plaintiff Trama never gave Trellis permission to use her identity to promote Trellis's business.  Plaintiff Trama is not and has never been a customer of Trellis, nor does she have any relationship with Trellis at all.

### D.    Plaintiff Brodiski-Specific Allegations

46.    Plaintiff Jesika Brodiski discovered that Trellis was using her identity to advertise paid subscriptions to Trellis.

47.    A search of Plaintiff Brodiski's name on Google resulted in a link to Trellis's website as a search result.  The search result links to a Trellis page with information about a lawsuit Brodiski was previously involved in.

48.    Trellis specifically identified Plaintiff Brodiski by her full name and details about the lawsuit she was involved in such as the location of the lawsuit, the other parties to the lawsuit, the nature of the lawsuit, and the date of the lawsuit.

49.    Plaintiff Brodiski never gave Trellis written consent – nor consent of any kind -- to use any part of her identity for commercial purposes.  Plaintiff Brodiski never gave Trellis permission to use her identity to promote Trellis's business.  Plaintiff Brodiski is not and has never been a customer of Trellis, nor does she have any relationship with Trellis at all.

## V.    CLASS ACTION ALLEGATIONS

50.    Plaintiffs bring this action on behalf of themselves and all persons similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure and seek certification of each Class below:

**California Class:**
All California residents whose identity was the subject of a lawsuit preview page published by Trellis and viewed for the first time during the Class Period. Plaintiffs Eom and Trama represent the California Class.

**Illinois Class:**
All Illinois residents whose identity was the subject of a lawsuit preview page published by Trellis and viewed for the first time during the Class Period. Plaintiff Curley represents the Illinois Class.

**Washington Class:**
All Washington residents whose identity was the subject of a lawsuit preview page published by Trellis and viewed for the first time during the Class Period. Plaintiff Brodiski represents the Washington Class.

(collectively, the "Classes") (individuals belonging to any class are "Class Members").

51. Excluded from the Classes are (1) any Judge or Magistrate presiding over this action and members of their families, (2) Defendant, Defendant's subsidiaries, successors, predecessors, and any entity in which Defendant has a controlling interest, the officers and directors of Defendant at all relevant times, as well as members of their immediate families, (3) persons who properly execute and file a timely request for exclusion from the Classes, and (4) the legal representatives, successors, or assigns of any such excluded persons.

52. The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, discovery, concealment, and accrual issues, and ending on the date of entry of judgment.[8]

53. Plaintiffs reserve the right to expand, limit, modify, or amend the class definitions stated above, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, among other things, changing circumstances, or new facts obtained during discovery.

54. **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiffs allege that there are in excess of ten thousand members of the Class.

55. **Typicality.** Plaintiffs' claims are typical of those of other members of the Classes they propose to represent, all of whom have suffered similar harm due to Defendant's course of conduct as described herein.

---

[8] The Class Period is at minimum 2 years from the date of filing of this complaint.

56.    **Adequacy of Representation.** Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class. Plaintiffs have retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiffs and their counsel intend to diligently prosecute this action.

57.    **Policies Generally Applicable to the Class**.  This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's policies challenged herein apply to and affect members of the Classes uniformly, and Plaintiffs' challenge of these policies hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiffs in their individual capacities. Plaintiffs and the Class Members have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

58.    **Existence and Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all Class Members that predominate over any questions affecting only individual members of the Classes. These common legal and factual questions, which do not vary among members of the Classes, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

    a.  Whether Defendant used Class Members' identities;

    b.  Whether any use of Class Members' identities was for a commercial purpose;

    c.  Whether Defendant had Class Members' consent to use their identities in Defendant's lawsuit preview page advertisements;

    d.  Whether Defendant's conduct was a violation of; the CRPL, Cal. Civ. Code § 3344; California's common law right of publicity; California's prohibition against unjust enrichment; the IPRA, 765 ILCS 1075/1, *et seq*., and the WPRA, RCW § 63.60 *et seq.*

e. Whether Plaintiffs and the Classes are entitled to monetary damages and injunctive relief.

59. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every Class Member could afford individual litigation, the adjudication of at least tens of thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented herein, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the Class Members. Plaintiffs anticipate no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Classes may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Classes who are not parties to such adjudications, or that would substantially impair or impede the ability of such non-party class members to protect their interests.

# CLAIMS FOR RELIEF

## COUNT I
### VIOLATION OF CALIFORNIA RIGHT OF PUBLICITY LAW (CRPL), CAL. CIV. CODE § 3344
**(By Plaintiffs Victoria Eom and Megan Trama, Individually and On Behalf of the California Class)**

60.    Plaintiffs Eom and Trama incorporate the foregoing allegations as if fully set forth herein.

61.    Defendant sells paid access to its suite of AI-powered litigation tools informed by a massive proprietary database of underlying litigation data.

62.    As described above, to promote those subscriptions, Defendant used Plaintiffs Eom and Trama's and the California Class Members' identities on lawsuit preview pages, which display individuals found within its litigation database that match searched-for names, alongside uniquely identifying information such as the parties to the lawsuit, the location and date of the lawsuit, and the nature of the lawsuit. This information serves to identify such individuals.

63.    The lawsuit preview pages have a commercial purpose in that they promote the Trellis website and paid access to the AI-powered litigation tools it offers.

64.    Plaintiffs Eom and Trama and California Class Members never provided Defendant with their written consent to use their full names (or any attribute of their identity) in advertisements for Trellis. Defendant never notified Plaintiffs Eom and Trama and California Class Members that their identities would be used in commercial advertisements.

65.    Defendant deprived Plaintiffs Eom and Trama and California Class Members of control over whether and how their names and other identifying information can be used for commercial purposes.

66.    Based upon Defendant's violation of the California Right of Publicity Statute, Plaintiffs Eom and Trama and California Class Members are entitled to (1) an injunction

requiring Defendant to cease using Plaintiffs Eom and Trama's and California Class Members' names and any attributes of their identities to advertise its products and services, (2) the greater of an award of actual damages (including profits derived from the unauthorized use of Plaintiffs Eom and Trama's and California Class Members' names and identities) or statutory damages of $750 per violation to the California Class Members, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees under Cal. Civ. Code § 3344(a).

## <u>COUNT II</u>
## VIOLATION OF COMMON LAW RIGHT OF PUBLICITY
### (By Plaintiffs Victoria Eom and Megan Trama, Individually and On Behalf of the California Class)

67.    Plaintiffs Eom and Trama incorporate the foregoing allegations as if fully set forth herein.

68.    Defendant sells paid access to its suite of AI-powered litigation tools informed by a massive proprietary database of underlying litigation data.

69.    As described above, to promote those subscriptions, Defendant used Plaintiffs Eom and Trama's and the California Class Members' identities on lawsuit preview pages, which display individuals found within its litigation database that match searched-for names, alongside uniquely identifying information such as the parties to the lawsuit, the location and date of the lawsuit, and the nature of the lawsuit.  This information serves to identify such individuals.

70.    The lawsuit preview pages have a commercial purpose in that they promote the Trellis website and paid access to the AI-powered litigation tools it offers.  The lawsuit preview pages also operates to Defendant's advantage by providing an incredibly high volume of searchable pages, which boosts Defendant's search engine optimization results and increases the likelihood Defendant's website will be a high-ranking search result even for searches other than individual name searches.

71.    Plaintiffs Eom and Trama and California Class Members never provided Defendant with their written consent to use their full names (or any attribute of their

identity) in advertisements for Trellis. Defendant never notified Plaintiffs Eom and Trama and California Class Members that their identities would be used in commercial advertisements.

72.     Defendant deprived Plaintiffs Eom Trama and California Class Members of control over whether and how their names and other identifying information can be used for commercial purposes and to Defendant's advantage.

73.     Based upon Defendant's violation of the common law right of publicity, Plaintiff Trama and California Class Members are entitled to (1) an injunction requiring Defendant to cease using Plaintiffs Eom and Trama's and California Class Members' names and any attributes of their identities to advertise its products and services, (2) actual damages including profits derived from the unauthorized use of Plaintiffs Eom and Trama's and California Class Members' names and identities, and (3) an award of punitive damages.

## COUNT III
### COMMON LAW UNJUST ENRICHMENT / QUASI-CONTRACT
**(By Plaintiffs Victoria Eom and Megan Trama, Individually and On Behalf of the California Class)**

74.     Plaintiffs Eom and Trama incorporate the foregoing allegations as if fully set forth herein.

75.     Plaintiffs Eom and Trama plead this claim in the alternative to her remaining claims.

76.     California law permits a standalone claim for unjust enrichment, allowing the court to construe the cause of action as a quasi-contract claim. *E.g., Astiana v. Hain Celestial Group, Inc*., 783 F.3d 753, 756 (9th Cir. 2015).

77.     California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss. *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 599 (9th Cir. 2020).

78.     California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial

resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable.

79.    Under California law, a stake in unjustly earned profits exists regardless of whether an individual planned to sell her name, image, likeness, or other identifiable aspects or whether a defendant's action directly caused the plaintiff's property to become less valuable.

80.    Plaintiffs Eom and Trama and the California Class Members retain a stake in the profits garnered from their publicity rights because the circumstances are such that, as between Plaintiffs Eom and Trama and Class members, on the one hand, and Defendant, on the other hand, it is unjust for Defendant to retain these profits.

81.    By disclosing and using Plaintiffs Eom and Trama's and the California Class Members' identities on lawsuit preview pages without their permission, Defendant generated  revenue and was unjustly enriched at the expense of Plaintiffs Eom and Trama and the California Class. It would be inequitable and unconscionable for Defendant to retain the profit, benefit, and other compensation it obtained from using Plaintiffs Eom and Trama's and the California Class Members' identities for advertising and promotion of Defendant's products.

82.    Plaintiffs Eom and Trama and the California Class Members seek an order from this Court requiring Defendant to disgorge all proceeds, profits, benefits, and other compensation obtained by Defendant from its improper use of Plaintiffs Eom and Trama's and the California Class Members' identities for advertising and promotion of Defendant's products.

83.    Plaintiffs Eom and Trama and the California Class Members seek this equitable remedy because their legal remedies are inadequate.  An unjust enrichment theory provides the equitable disgorgement of profits even where an individual has not suffered a corresponding loss in the form of money damages.

CLASS ACTION COMPLAINT

## COUNT IV

### VIOLATION OF THE ILLINOIS RIGHT OF PUBLICITY ACT, 765 ILCS 1075
### (By Plaintiff Kirsten Curley, Individually and On Behalf of the Illinois Class)

84.    Plaintiff Curley incorporates the foregoing allegations as if fully set forth herein.

85.    Defendant sells paid access to its suite of AI-powered litigation tools informed by a massive proprietary database of underlying litigation data.

86.    As described above, to promote those subscriptions, Defendant used Plaintiff Curley's and the Illinois Class Members' identities on lawsuit preview pages, which display individuals found within its litigation database that match searched-for names, alongside uniquely identifying information such as the parties to the lawsuit, the location and date of the lawsuit, and the nature of the lawsuit. This information serves to identify such individuals.

87.    The lawsuit preview pages have a commercial purpose in that they promote the Trellis website and paid access to the AI-powered litigation tools it offers.

88.    Plaintiff Curley and Illinois Class Members never provided Defendant with their written consent to use their full names (or any attribute of their identity) in advertisements for Trellis. Defendant never notified Plaintiff Curley and Illinois Class Members that their identities would be used in commercial advertisements.

89.    Defendant deprived Plaintiff Curley and Illinois Class Members of control over whether and how their names and other identifying information can be used for commercial purposes.

90.    Based upon Defendant's violation of the Illinois Right of Publicity Act, Plaintiff Curley and Illinois Class Members are entitled to (1) an injunction requiring Defendant to cease using Plaintiff Curley's and Illinois Class Members' names and any attributes of their identities to advertise its products and services, (2) the greater of an award of actual damages (including profits derived from the unauthorized use of Plaintiff Curley's and Illinois Class Members' names and identities) or statutory damages of $1,000

per violation to the Illinois Class Members, (3) an award of punitive damages, and (4) an award of costs and reasonable attorneys' fees under 765 ILCS 1075/40-55.

## COUNT V
## VIOLATION OF THE WASHINGTON PERSONALITY RIGHTS ACT, RCW § 63.60
## (By Plaintiff Jesika Brodiski, Individually and On Behalf of the Washington Class)

91.    Plaintiff Brodiski incorporates the foregoing allegations as if fully set forth herein.

92.    The WPRA prohibits and provides damages for the knowing misappropriation of an individual's name, voice, signature, photograph, or likeness in advertising or soliciting without the individual's prior consent. *See* RCW § 63.60 *et seq.*

93.    Plaintiff Brodiski was and is a personality as defined by the WPRA. *Id.* at § 63.60.020.

94.    Defendant sells paid access to its suite of AI-powered litigation tools informed by a massive proprietary database of underlying litigation data.

95.    As described above, to promote those subscriptions, Defendant used Plaintiff Brodiski's and the Washington Class Members' identities on lawsuit preview pages, which display individuals found within its litigation database that match searched-for names, alongside uniquely identifying information such as the parties to the lawsuit, the location and date of the lawsuit, and the nature of the lawsuit. This information serves to identify such individuals, including by full name.

96.    The lawsuit preview pages are commercial advertising in that they promote the Trellis website and paid access to the AI-powered litigation tools it offers.

97.    Plaintiff Brodiski and Washington Class Members never provided Defendant with written, oral, express, or implied consent to use their full names (or any attribute of their personality) in advertisements for Trellis. Defendant never notified Plaintiff Brodiski and Washington Class Members that their identities would be used in commercial advertisements.

21

98.    Defendant deprived Plaintiff Brodiski and Washington Class Members of control over whether and how their names and other identifying information can be used for commercial purposes.

99.    As a direct and proximate result of Defendant's acts and conduct as alleged herein, Plaintiff Brodiski and Washington Class Members are entitled to (1) an injunction requiring Defendant to cease using Plaintiff Brodiski's and Washington Class Members' names and any attributes of their identities to advertise its products and services, (2) actual damages, plus any profits attributable to the unauthorized use of Plaintiff Brodiski's and Washington Class Members' names and identities that are not cumulative of actual damages, or statutory damages of $1,500 per violation to the Washington Class Members, and (3) an award of costs and reasonable attorneys' fees under RCW § 63.60.060.

100.    Plaintiff Brodiski and Washington Class Members are also entitled to the impoundment, deletion, or destruction of all materials used in violation of Plaintiffs' rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of the proposed Classes, respectfully pray for an Order providing the following relief:

a.    Certifying this case as a class action as defined above, appointing Plaintiffs as Class Representatives of their respective Classes, and appointing their counsel as Class Counsel;

b.    Declaring that Defendant's actions described herein constitute a violation of the California Right of Publicity Law, the California common law right of publicity, California common law's prohibition against unjust enrichment, the Illinois Right of Publicity Act, and the Washington Personality Rights Act;

c.    Awarding injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

CLASS ACTION COMPLAINT

d.  Awarding the greater of actual damages, including the profits derived from the unauthorized use of same, or damages in the amounts authorized by statute to the Members of the respective Classes;

e.  Awarding punitive damages as applicable;

f.  Awarding Plaintiffs and the Classes their reasonable litigation expenses and attorneys' fees;

g.  Awarding Plaintiffs and the Classes pre- and post-judgment interest; and

h.  Granting such other and further relief as the Court deems equitable and just.

**DEMAND FOR JURY TRIAL**

Plaintiffs, individually and on behalf of the proposed Classes, demand a trial by jury for all claims so triable.

Dated: June 12, 2025                    MILBERG COLEMAN BRYSON
                                        PHILLIPS GROSSMAN, PLLC


                                        By: */s/ William J. Edelman*
                                            WILLIAM J. EDELMAN (SBN 285177)
                                            Attorneys for Plaintiffs