MANATT, PHELPS & PHILLIPS, LLP
NATHANIEL L. BACH (Bar No. 246518)
 *nbach@manatt.com*
JUSTIN JONES RODRIGUEZ (Bar No. 279080)
 *jjrodriguez@manatt.com*
FRAYLIN F. GRAMAJO (Bar No. 359451)
 *fgramajo@manatt.com*
2049 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

Attorneys for Defendant
TRELLIS RESEARCH, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA EOM, KIRSTEN CURLEY, MEGAN TRAMA, and JESIKA BRODISKI, individually and on behalf of all similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>TRELLIS RESEARCH, INC. d/b/a Trellis, a Delaware corporation.<br><br>Defendant. | Case No. 2:25-cv-05331-MWF-AJR<br>Hon. Michael W. Fitzgerald<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRELLIS'S MOTION TO DISMISS (12(b)(1) & 12(b)(6)) AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP) THE CLASS ACTION COMPLAINT**<br><br>[*Filed concurrently with Notice of Motion and Motion; Request for Judicial Notice; Declaration of Nathaniel L. Bach; and [Proposed] Order*]<br><br>Hearing Date:   September 29, 2025<br>Hearing Time:   10:00 a.m.<br>Location:   Courtroom 5A<br><br>Complaint filed:   June 12, 2025<br>Trial Date:   Not set |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................ 8

II. FACTUAL BACKGROUND ..................................................................... 10

III. LEGAL STANDARD ................................................................................ 12

IV. ARGUMENT ............................................................................................. 14

   A. The Complaint Should be Dismissed Under Rule 12(b)(1) Because Plaintiffs Lack Constitutional Standing. ............................ 14

   B. Plaintiffs' Claims Should be Dismissed Under Rule 12(b)(6). ......... 15

      1. Plaintiffs Fail to Allege a Commercial Use of Their Names. ................................................................................... 15

      2. Factual References to Plaintiffs' Names in Court Records are Expressly Exempt as in the Public Interest and in Connection with News and Public Affairs. ............................ 17

      3. The First Amendment Bars Plaintiffs' Claims. ..................... 22

      4. Trellis's Factual References to Plaintiffs' Names Are at Best Incidental and Non-Actionable. ................................... 23

      1. Plaintiffs Fail to Allege that Trellis Uses Their Names to Advertise a Separate Product. ............................................. 24

      2. Section 230 Bars Plaintiffs' Claims. ..................................... 25

      3. Plaintiffs' Unjust Enrichment Claim Falls, too. .................... 26

   C. Plaintiffs' Claims Should be Struck under California's and Washington's Anti-SLAPP Laws. .................................................. 27

V. CONCLUSION .......................................................................................... 29

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aligo v. Time-Life Books, Inc.*,
1994 WL 715605 (N.D. Cal. Dec. 19, 1994) ............................................. 13, 23

*Ballinger v. City of Oakland*,
24 F.4th 1287 (9th Cir. 2022) .................................................................... 13

*Barrett v. Rosenthal*,
40 Cal. 4th 33 (2006) ................................................................................. 28

*Bell Alt. v. Twombly*,
550 U.S. 544 (2007) ............................................................................. 12, 13

*Brooks v. Thomson Reuters Corporation*,
2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .......................................... 24

*Cairns v. Franklin Mint Co.*,
24 F. Supp. 2d 1013 (C.D. Cal. 1998) ...................................................... 13

*Cal. First Amendment Coal. v. Woodford*,
299 F.3d 868 (9th Cir. 2002) ..................................................................... 22

*Calise v. Meta Platforms, Inc.*,
103 F.4th 732 (9th Cir. 2024) .............................................................. 25, 26

*Callahan v. Ancestry.com Inc.*,
2021 WL 2433893 (N.D. Cal. June 15, 2021) ............................. 13, 15, 25, 26

*Cher v. F. Int'l, Ltd.*,
692 F.2d 634 (9th Cir. 1982) ..................................................................... 23

*Cohen v. Facebook, Inc.*,
2011 WL 5117164 (N.D. Cal. Oct. 27, 2011) ........................................... 15

*Courthouse News Serv. v. Planet*,
750 F.3d 776 (9th Cir. 2014) .............................................................. 8, 18, 19

*Cox Broad. Corp. v. Cohn*,
420 U.S. 469 (1975) ................................................................................... 23

*Craig v. Harney*,
331 U.S. 367 (1947) ............................................................................. 14, 15

*De Havilland v. FX Networks, LLC*,
21 Cal. App. 5th 845 (2018) ...................................................................... 26

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:25-CV-05331-MWF-AJR

MEMORANDUM IN SUPPORT OF TRELLIS'S MOTION TO DISMISS AND STRIKE

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Doe v. Holy See*,
557 F.3d 1066 (9th Cir. 2009) ...................................................................... 12

*Dora v. Frontline Video, Inc.*,
15 Cal. App. 4th 536 (1993) ........................................................... 18, 19, 22

*Eastwood v. Superior Court*,
149 Cal. App. 3d 409 (1983) ........................................................................ 16

*Gionfriddo v. Major League Baseball*,
94 Cal. App. 4th 400 (2001) .................................................................... 22, 25

*Guglielmi v. Spelling-Goldberg Prods.*,
25 Cal. 3d 860 (1979) (Bird, C.J., concurring) ...................................... 17

*Haglund v. Sawant*,
2018 WL 2216154 (W.D. Wash. May 15, 2018), *aff'd*, 781 F. App'x 586
(9th Cir. 2019) .......................................................................................... 20

*Hawkins v. Shimano N. Am. Bicycle Inc.*,
729 F. Supp. 3d 989 (C.D. Cal. 2024) ........................................................ 26

*Herring Networks v. Maddow*,
8 F.4th 1148 (9th Cir. 2021) ........................................................................ 27

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*,
724 F.3d 1268 (9th Cir. 2013) ...................................................................... 19

*Kimzey v. Yelp! Inc.*,
836 F.3d 1263 (9th Cir. 2016) ...................................................................... 26

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ...................................................................... 13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .............................................................................. 12, 14

*Makaeff v. Trump Univ., LLC*,
715 F.3d 254 (9th Cir. 2013) ........................................................................ 13

*Metabolife Int'l, Inc. v. Wornick*,
264 F.3d 832 (9th Cir. 2001) ........................................................................ 27

*Montana v. San Jose Mercury News, Inc.*,
34 Cal. App. 4th 790 (1995) ........................................................................ 18

*New Kids On The Block v. News Am. Pub., Inc.*,
745 F. Supp. 1540 (C.D. Cal. 1990), *aff'd*, 971 F.2d 302 (9th Cir. 1992) ... 16, 23

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

Case No. 2:25-CV-05331-MWF-AJR

MEMORANDUM IN SUPPORT OF TRELLIS'S MOTION TO DISMISS AND STRIKE

**TABLE OF AUTHORITIES**
(continued)

Page

*New Kids on the Block v. News Am. Pub., Inc.*,
 971 F.2d 302 (9th Cir. 1992) ..................................................................... 18, 19

*Nieman v. Versuslaw, Inc.*,
 2012 WL 3201931, (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th
 Cir. 2013) ................................................................................. 9, 20, 22, 23

*Nieman v. VersusLaw, Inc.*,
 512 F. App'x 635 (7th Cir. 2013) ...................................................................... 8, 14

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
 890 F.3d 828 (9th Cir. 2018) ........................................................................ 13

*Project Veritas v. Leland Stanford Junior Univ.*,
 2022 WL 1555047 (W.D. Wash. May 17, 2022) ........................................... 27

*RDF Media Ltd. v. Fox Broad. Co.*,
 372 F. Supp. 2d 556 (C.D. Cal. 2005) ......................................................... 13

*Richmond Newspapers, Inc. v. Virginia*,
 448 U.S. 555 (1980) (Brennan, J., concurring) ........................................... 19

*Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*,
 487 U.S. 781 (1988) ..................................................................................... 17

*Robinson v. HSBC Bank USA*,
 732 F. Supp. 2d 976 (N.D. Cal. 2010) ......................................................... 13

*Rubin v. City of Berwyn*,
 553 F. Supp. 476 (N.D. Ill.1982) ................................................................. 22

*Sarver v. Chartier*,
 813 F.3d 891 (9th Cir. 2016) ....................................................................... 29

*Sellers v. Sage Software Inc.*,
 2018 WL 5631105 (N.D. Ga. Oct. 10, 2018) ............................................... 14

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
 144 F. Supp. 3d 1088 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir.
 2017) ............................................................................................................. 25

*Skolnick v. Altheimer & Gray*,
 191 Ill. 2d 214 (2000) ................................................................................. 19

*Spokeo, Inc. v. Robins*,
 578 U.S. 330 (2016) ................................................................................. 14, 15

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

5

Case No. 2:25-CV-05331-MWF-AJR

MEMORANDUM IN SUPPORT OF TRELLIS'S MOTION TO DISMISS AND STRIKE

## TABLE OF AUTHORITIES
(continued)

**Page**

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ...............................................................................16

*Sybersound Recs., Inc. v. UAV Corp.*,
517 F.3d 1137 (9th Cir. 2008) .............................................................................14

*Trama et al. v. UniCourt Inc.*,
Case No. 2:25-cv-05338-FMO-MAA (June 12, 2025) .......................................12

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) .............................................................................27

*Vinci v. Am. Can Co.*,
69 Ohio App. 3d 727 (1990) ................................................................................24

*Zacchini v. Scripps-Howard Broad. Co.*,
433 U.S. 562 (1977) ..................................................................................8, 21, 22

## STATUTES

47 U.S.C. § 230(f)(2) ...................................................................................................25

765 Ill. Comp. Stat. Ann. 1075/1, *et seq*. ..................................................................12

765 Ill. Comp. Stat. Ann. 1075/30(a .........................................................................16

765 Ill. Comp. Stat. Ann. 1075/35(b)(2) ...................................................................18

765 Ill. Comp. Stat. Ann. 1075/35(b)(4) ...................................................................18

Cal. Civ. Code § 3344 .................................................................................................15

Cal. Civ. Code § 3344(a) ............................................................................................15

Cal. Civ. Code § 3344(d) ................................................................................17, 18, 19

Cal. Civ. Code § 3344, *et seq*. ....................................................................................12

Cal. Code Civ. Proc. § 425.16 ..............................................................................13, 27

Cal. Code Civ. Proc. § 425.16(b)(1) ..........................................................................28

Cal. Code Civ. Proc. § 425.16(e) ...............................................................................28

Communications Decency Act, 47 U.S.C. § 230(c)(1) ........................................25, 26

Communications Decency Act, Section 230 ......................................................9, 25, 26

Illinois Right of Publicity Act .............................................................................12, 20

Uniform Public Expression Protection Act ........................................................27, 28

Wash. Rev. Code Ann. § 4.105.010 ...........................................................................28

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

6                          Case No. 2:25-CV-05331-MWF-AJR

## TABLE OF AUTHORITIES
(continued)

**Page**

Wash. Rev. Code Ann. § 4.105.010 *et seq.*....................................................................13

Wash. Rev. Code Ann. § 4.105.901 .............................................................................27

Wash. Rev. Code Ann. § 63.60.050 .............................................................................16

Wash. Rev. Code Ann. § 63.60.070(1).........................................................................18

Wash. Rev. Code § 63.60.070(5)..................................................................................17

Wash. Rev. Code § 63.60.070(6)..................................................................................23

Washington Personality Rights Act, Wash. Rev. Code Ann. § 63.60 *et seq.* ...12, 16

## OTHER AUTHORITIES

First Amendment ..............................................................................................passim

First and Fourteenth Amendments ..............................................................................23

Restatement (Second) of Torts § 652C, Comment d (1997)......................................24

United States Constitution ....................................................................................27, 28

Washington State Constitution .............................................................................27, 28

## RULES

Rule 12(b)(1).............................................................................................9, 12, 14, 29

Rule 12(b)(6)...................................................................................................passim

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:25-CV-05331-MWF-AJR

MEMORANDUM IN SUPPORT OF TRELLIS'S MOTION TO DISMISS AND STRIKE

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

These principles are true: (i) court records belong to the public;[1] (ii) increasing access to court records is in the public interest;[2] and (iii) the First Amendment bars right of publicity claims based on the publication of information in the public interest.[3] Plaintiffs' unprecedented right of publicity claims trample these principles and should be dismissed.

Trellis is a legal research provider and re-publisher of public trial court records. It republishes civil trial court records without any alteration or embellishment, offering both free and subscription access to a database of public court records relied on by the public, as well as journalists and news organizations, courts, attorneys, law schools and libraries. Trellis makes already public court records more accessible to the public—advancing the very transparency and access that underpins confidence in the judicial system.

Plaintiffs' claims seek to punish Trellis for republishing public trial court dockets where Plaintiffs' names appear as part of official case captions. In other words, Plaintiffs seek to weaponize public records by asserting a proprietary interest in public property. Such a radical theory lacks any legal basis and is anathema to the First Amendment's privilege for the publication of matters in the public interest.

---

[1] *Nieman v. VersusLaw, Inc.*, 512 F. App'x 635, 637–38 (7th Cir. 2013) ("Judicial opinions are not the litigants' property. They belong to the public, which underwrites the judicial system that produces them.").

[2] *Courthouse News Serv. v. Planet*, 750 F.3d 776, 785 (9th Cir. 2014) ("The Supreme Court has repeatedly held that access to public proceedings and records is an indispensable predicate to free expression about the workings of government.").

[3] *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 567 (1977) ("[T]he press has a privilege to report matters of legitimate public interest even though such reports might intrude on matters otherwise private … The same privilege exists in cases where appropriation of a right of publicity is claimed.") (citation omitted).

Courts have already rejected such an attempt. In *Nieman v. Versuslaw, Inc.*, the court dismissed a nearly identical right of publicity claim against a legal database, reasoning that under such a theory "every person who is involved in litigation who has public court documents that can be accessed for a fee on the Internet by doing a browser search or found by using Westlaw, Lexis, Versuslaw, or any other legal research site can state a claim under the Right of Publicity Act. This cannot be the case." 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013). Here, too, Plaintiffs' Complaint fails as a matter of law, and should be dismissed for multiple, independent reasons:

**A. Rule 12(b)(1):** Plaintiffs lack standing to assert proprietary rights over public judicial records, and they allege no cognizable injury from their republication.

**B. Rule 12(b)(6):** Plaintiffs cannot state their claims because:

1. They fail to allege a commercial use of their names; Trellis's alleged use is descriptive and informational, and factually describes public dockets.

2. Both statutory and common law exempt uses connected to news, public affairs, and matters of public interest, which the alleged uses are.

3. The First Amendment bars Plaintiffs' claims. Countenancing Plaintiffs' theory would expose news organizations and legal publishers—including those relied upon by courts—to liability for republishing public records.

4. Any references to Plaintiffs' names are merely incidental, non-actionable uses.

5. Plaintiffs fail to allege any use of their names to advertise a separate product.

6. Section 230 of the Communications Decency Act shields Trellis from liability for republication of court-provided records.

7. The unjust enrichment claim fails for the same reasons.

**C. Anti-SLAPP:** Because each failed claim targets Trellis's constitutionally protected publication of public records, they should also be struck under the anti-

SLAPP laws of California and Washington.

Trellis's Motion should be granted in all respects.

## II.    <u>FACTUAL BACKGROUND</u>

Trellis operates a legal research website containing the largest state-level legal database, covering "45 states and 3,335 courts in 2,479 counties amounting to 'hundreds of millions of state court civil litigation Dockets and Documents from all over the country.'" Compl. ¶ 14. Plaintiffs allege Trellis uses individuals' identities to advertise its subscription products because "if a user searches Google for a particular person, and that person was a party in a lawsuit in Trellis's database, one of the most prominent search results is typically a link to Trellis's website containing the name of that lawsuit." *Id*. ¶ 20; *see also id*. ¶ 2 (Trellis displays "millions of entries in its database about individuals previously involved in litigation").

Plaintiffs allege that when a user "clicks that [Google] link and visits Trellis's website, the Trellis landing page displays an overview of the information on the docket relating to the lawsuit involving the searched-for individual." *Id*. ¶ 21. Plaintiffs allege such "preview page" commercially uses their names as follows:



MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

Case No. 2:25-CV-05331-MWF-AJR

MEMORANDUM IN SUPPORT OF TRELLIS'S MOTION TO DISMISS AND STRIKE

*Id.*

Plaintiffs allege that "[i]f a user on Trellis's website wants to view detailed substantive information about the lawsuit … such as the case number, the full docket, or a document referenced in landing page summary, Trellis forces the user to sign up for a paid monthly subscription." *Id.* ¶ 22. In that process, one must "create a user profile," then the "user is taken back to the landing page," and then "if the user clicks on one of the links seeking more detailed information … the user is taken to a subscription signup page, as follows:



*Id.* ¶ 23.

Although this subscription page does not reflect Plaintiffs' names or identities, Plaintiffs allege that "Trellis's use of individuals' identities to draw users to its website via search results is intended to sell access to Trellis' subscription-based AI litigation tools," and that in so doing "Trellis misappropriates those identities for its own commercial benefit to promote paid subscriptions to its products and services."

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

11                    Case No. 2:25-CV-05331-MWF-AJR
MEMORANDUM IN SUPPORT OF TRELLIS'S MOTION TO DISMISS AND STRIKE

*Id.* ¶ 26.

Plaintiffs are four individuals residing in California, Illinois, or Washington. Each alleges that a Google or Bing search of her name yielded a link to Trellis's website with information about a lawsuit involving that Plaintiff's name in the case caption. *Id.* ¶¶ 33, 38, 43, 47. Plaintiffs complain that Trellis provides docket information that includes "uniquely identifying information such as the parties to the lawsuit, the location and date of the lawsuit, and the nature of the lawsuit." *Id.* ¶ 62.

On these allegations, Plaintiffs bring class claims for violations of California Right of Publicity Statute, Cal. Civ. Code § 3344, *et seq.* (Count I), California's common law right of publicity (Count II), California's common law prohibition against unjust enrichment (pled in the alternative) (Count III), the Illinois Right of Publicity Act ("IRPA"), 765 Ill. Comp. Stat. Ann. 1075/1, *et seq.* (Count IV), and the Washington Personality Rights Act ("WPRA"), Wash. Rev. Code Ann. § 63.60 *et seq.* (Count V).[4]

## III.   <u>LEGAL STANDARD</u>

**Rule 12(b)(1)**. To establish Article III standing to bring a claim in federal court, a plaintiff must demonstrate, *inter alia*, a concrete and particularized "injury in fact" that is capable of being redressed by a favorable decision in the case at bar. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). For a 12(b)(1) facial challenge, the court need not accept the truth of legal conclusions couched in the form of factual allegations. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

**Rule 12(b)(6)**. To survive a Rule 12(b)(6) motion to dismiss, a cause of action must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Alt. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is proper if the complaint "lacks

---

[4] Plaintiffs Trama, Eom, and Brodiski (represented by same counsel) filed a parallel lawsuit against another legal publisher that mirrors in most respects their Complaint against Trellis. *See Trama et al. v. UniCourt Inc.*, Case No. 2:25-cv-05338-FMO-MAA (June 12, 2025).

a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Ballinger v. City of Oakland*, 24 F.4th 1287, 1292 (9th Cir. 2022). Allegations must contain "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Courts may consider documents or other evidence not attached but incorporated by reference into the complaint, without converting the motion to dismiss into a summary judgment motion. *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005). Where "amendment would be futile" the complaint should be dismissed with prejudice. *RDF Media Ltd. v. Fox Broad. Co.*, 372 F. Supp. 2d 556, 561 (C.D. Cal. 2005).

Courts may and do dismiss and/or strike right of publicity claims under Rule 12(b)(6), including with prejudice. *E.g.*, *Robinson v. HSBC Bank USA*, 732 F. Supp. 2d 976, 983 (N.D. Cal. 2010) (without leave, with prejudice); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1022 (C.D. Cal. 1998); *Callahan v. Ancestry.com Inc.*, 2021 WL 2433893, at *3 (N.D. Cal. June 15, 2021); *Aligo v. Time-Life Books, Inc.*, 1994 WL 715605, at *2 (N.D. Cal. Dec. 19, 1994) (with prejudice).

**Anti-SLAPP.** California and Washington law permit a defendant to seek dismissal of a meritless claim relating to a defendant's exercise of its constitutional rights to speech on a public issue via an anti-SLAPP motion to strike. Cal. Code Civ. Proc. § 425.16; Wash. Rev. Code Ann. § 4.105.010 *et seq*. When the anti-SLAPP laws apply, the burden shifts to the plaintiff to establish a probability of prevailing on the claim. If a plaintiff cannot meet its burden on this step, the Court should grant the motion. *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013). Where, as here, "a defendant makes a special motion to strike based on alleged deficiencies in the plaintiff's complaint, the motion must be treated in the same manner as a motion under Rule 12(b)(6)," and no discovery is necessary or required before the Court can rule on the anti-SLAPP motion. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018) (citation omitted).

## IV.    ARGUMENT

### A.    The Complaint Should be Dismissed Under Rule 12(b)(1) Because Plaintiffs Lack Constitutional Standing.

Plaintiffs lack standing because they have no commercial interest in public court records, including those that contain their name as part of the case caption. The "irreducible constitutional minimum" of standing consists of three elements; the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan,* 504 U.S. at 560–61. Trellis brings its jurisdictional attack as a facial challenge and "[w]here, as here, a case is at the pleading stage, the plaintiff must 'clearly … allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan*, 504 U.S. at 560). Plaintiffs have no legally protected interest in public court records, including when their name appears in such public records. "Judicial opinions are not the litigants' property. They belong to the public, which underwrites the judicial system that produces them." *Nieman v. VersusLaw, Inc.*, 512 F. App'x 635, 637–38 (7th Cir. 2013) (citation modified). "What transpires in the court room is public property." *Craig v. Harney,* 331 U.S. 367, 374 (1947); *Sellers v. Sage Software Inc.*, 2018 WL 5631105, at *1 (N.D. Ga. Oct. 10, 2018) (quoting *Craig* and noting that "this concept generally applies to what transpires on the docket of a case").

Just as one who is not the legal owner of a copyright—because, for instance, the work is in the public domain—lacks standing to sue for infringement, Plaintiffs have no proprietary interest in *public* court records. *Cf. Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) ("Under copyright law, only copyright owners and exclusive licensees of copyright may enforce a copyright or a

license.").

For a right of publicity claim, where plaintiffs lack a commercial interest in the subject matter that is the basis for their claim, they lack standing. *Callahan*, 2021 WL 2433893, at *3 (no Article III injury where "the plaintiffs do not show a commercial interest in their images that precluded the platform's use of them to market the platform's features"). Here, too, Plaintiffs lack a commercial interest in public court records, and they thus suffer no cognizable injury by Trellis's republication of such records. This "lack of cognizable injury is fatal to plaintiffs' claim under Civil Code § 3344 despite the provision for statutory damages." *Cohen v. Facebook, Inc.*, 2011 WL 5117164, at *3 n.8 (N.D. Cal. Oct. 27, 2011). Indeed, Section "3344(a) imposes liability only where 'persons [are] injured as a result' and thus requires injury." *Callahan*, 2021 WL 2433893, at *4. "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 578 U.S. at 341.

Plaintiffs have not alleged a use of their names outside the context of publicly owned court records. Because those records are quintessentially public and freely reproduceable, Plaintiffs have not suffered an injury in fact by Trellis's republication, as "[t]hose who see and hear what transpired [in court] can report it with impunity." *Craig*, 331 U.S. at 374. Plaintiffs have thus not suffered constitutional injury, and this court lacks subject matter jurisdiction.

### B.   Plaintiffs' Claims Should be Dismissed Under Rule 12(b)(6).

Even if they had standing, Plaintiffs' claims fail for numerous reasons.

#### 1.   Plaintiffs Fail to Allege a Commercial Use of Their Names.

Fundamental to California's, Washington's, and Illinois's statutory and California's common law rights of publicity is that the defendant has used the plaintiff's name or identity for a *commercial* or *advertising* purpose. California's statutory right applies to a use "for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services." Cal. Civ. Code § 3344(a).

And California common law requires "the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise." *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 416–17 (1983). Illinois likewise requires a plaintiff to establish use of an individual's identity "for commercial purposes." 765 Ill. Comp. Stat. Ann. 1075/30(a). Washington requires the plaintiff to prove use "on or in goods, merchandise, or products entered into commerce in this state, or for purposes of advertising products, merchandise, goods, or services." Wash. Rev. Code Ann. § 63.60.050.

Here, Plaintiffs fail to allege a commercial use of Plaintiffs' names for which consent is required, instead alleging only facts showing that Trellis engages in *descriptive* use. Plaintiffs conclusorily allege that "[t]he lawsuit preview pages have a commercial purpose in that they promote the Trellis website and paid access to the AI-powered litigation tools it offers." Compl. ¶¶ 63, 70. But this legal conclusion need not be accepted as true, and it is entirely incompatible with the screenshots of the preview page and subscription sign-up page alleged in Paragraphs 21 and 23. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences") (citation omitted). As those screenshots conclusively show, Compl. ¶¶ 21, 23, Plaintiffs' names are reflected within Trellis's database and in the so-called "preview pages" *only* in their capacity as parties to public court proceedings and Trellis's neutral republication of that fact. In other words, Trellis's use of Plaintiffs' names is descriptive, informational, and inseparable from the public record at issue. *New Kids On The Block v. News Am. Pub., Inc.*, 745 F. Supp. 1540, 1546 (C.D. Cal. 1990) (dismissing right of publicity claim and holding that "[i]f the purpose is 'informative or cultural' the use is immune"), *aff'd*, 971 F.2d 302 (9th Cir. 1992).

The WPRA expressly does not apply to a use of a name "that is merely descriptive and used fairly and in good faith only to identify or describe something

other than the individual or personality, such as, without limitation … a party to a transaction or to accurately describe the goods or services of a party." Wash Rev. Code § 63.60.070(5). The alleged use of Plaintiffs' names is descriptive, necessary to, and intertwined with an accurate description of the court records and is not a use that leverages an individual's name for a commercial purpose. Restatement (Third) of Unfair Comp. § 47 (1995) ("The use of a person's identity primarily for the purpose of communicating information or expressing ideas is not generally actionable as a violation of the person's right of publicity."); *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 796 (1988) (speech is not commercial where "it is inextricably intertwined with otherwise fully protected speech"). Indeed, Plaintiffs do not allege that Trellis treats differently case names that include an individual's name versus a corporate entity's name, nor could they—in either case, Trellis's use is purely descriptive and does not exploit personal identity.

Moreover, that an individual's name is reflected in a commercial product or that the defendant obtains a financial benefit does not satisfy the commercial use element. *Guglielmi v. Spelling-Goldberg Prods.*, 25 Cal. 3d 860, 868 (1979) ("The First Amendment is not limited to those who publish without charge. Whether the activity involves newspaper publication or motion picture production, it does not lose its constitutional protection because it is undertaken for profit.") (Bird, C.J., concurring); *see also* Restatement (Third) of Unfair Comp. § 47, Comment c ("that the publisher … seeks or is successful in obtaining a commercial advantage from an otherwise permitted use of another's identity does not render the appropriation actionable."). Because Plaintiffs fail to allege a commercial purpose, their claims fail.

### 2. Factual References to Plaintiffs' Names in Court Records are Expressly Exempt as in the Public Interest and in Connection with News and Public Affairs.

Each of Plaintiffs' claims fails for the additional reason that Trellis's references to Plaintiffs' names in connection with court filings are newsworthy, in the public interest, and accounts of news or public affairs. Cal. Civ. Code § 3344(d)

("For purposes of this section, a use of a name, voice, signature, photograph, or likeness in connection with any *news, public affairs*, or sports broadcast or account, or any political campaign, shall not constitute a use for which consent is required under subdivision (a).") (emphasis added); *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 793 (1995) (common law exception precludes liability for "publication of matters in the public interest").

Washington's exceptions are even broader, exempting use "in connection with matters of cultural, historical, political, religious, educational, *newsworthy, or public interest*") Wash. Rev. Code Ann. § 63.60.070(1) (emphasis added); "a news story, public affairs report, or sports broadcast or account … when the use does not inaccurately claim or state an endorsement by the individual or personality," *id.* § 63.60.070(2)(b); and "[a]n advertisement or commercial announcement for a use permitted by subsections (1) [] of this section and [] (b) of this subsection," *id.* § 63.60.070(2)(c).

And Illinois provides that publicity rights do not apply to "use of an individual's identity for non-commercial purposes, including any *news, public affairs*, or sports broadcast or account, or any political campaign," 765 Ill. Comp. Stat. Ann. 1075/35(b)(2) (emphasis added), or "promotional materials, advertisements, or commercial announcements" for such uses, *id.* 1075/35(b)(4).

**A.** Each state has broadly defined these exceptions. "Publication of matters in the public interest, which rests on the right of the public to know and the freedom of the press to tell it, is not ordinarily actionable." *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 536, 542 (1993) (citations omitted). The Ninth Circuit has also recognized that a defendant had "a complete defense" to claims for commercial and common law misappropriation of right of publicity where it used the "name 'in connection with any news, public affairs, or sports broadcast or account' which was true in all material respects." *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 309–10 (9th Cir. 1992) (holding "misappropriation claims are barred by [] section

3344(d)"). These common law and statutory exceptions are "based on First Amendment concerns" but are "not coextensive with the Federal Constitution." *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1282 (9th Cir. 2013). Rather, they are "designed to avoid First Amendment questions in the area of misappropriation by providing extra breathing space for the use of a person's name in connection with matters of public interest." *New Kids*, 971 F.2d at 310 n.10.

Here, Plaintiffs allege only that Trellis has used their names to identify them as parties in court records. Compl. ¶ 21. Courts in every jurisdiction have recognized the public interest in advancing access to court records, which are unquestionably "in connection with … news [and/or] public affairs." Cal. Civ. Code § 3344(d); *Dora*, 15 Cal. App. 4th at 545–46 ("[w]e presume that the Legislature intended that the category of public affairs would include things that would not necessarily be considered news," and even to include "something less important than news"); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 595 (1980) ("Public access is essential … if trial adjudication is to achieve the objective of maintaining public confidence in the administration of justice.") (Brennan, J., concurring); *Courthouse News Serv. v. Planet*, 750 F.3d 776, 785 (9th Cir. 2014) ("The Supreme Court has repeatedly held that access to public proceedings and records is an indispensable predicate to free expression about the workings of government."); *Skolnick v. Altheimer & Gray*, 191 Ill. 2d 214, 236 (2000) (citation modified) ("Once filed, the pleadings, motions and other papers filed with the court assume the presumption of public access."). Trellis's alleged use of Plaintiffs' names in connection with the publication of accounts of public affairs is in the public interest and thus expressly exempt by statute and under the common law.[5]

**B.** In a squarely on-point case, a federal district court in Illinois dismissed

---

[5] In California, "resolution of the statutory cause of action would determine the plaintiff's ability to maintain the common law cause of action." *Dora*, 15 Cal. App. 4th at 545. Because Plaintiffs' statutory claim fails, so does the common law claim.

under Rule 12(b)(6) an IRPA claim against the online legal database Versuslaw because the plaintiff's name was "used only to find documents related to his case, which are part of the public record." *Nieman*, 2012 WL 3201931, at *4, *aff'd*, 512 F. App'x 635 (7th Cir. 2013). There, the plaintiff "discovered that certain Internet websites were linking copies of information related to the litigation to Plaintiff's name, such that a simple Internet browser search for his name would provide immediate results that referenced one or more of the filings or rulings in the active litigation." *Id.* at *1.

In dismissing Nieman's claim with prejudice, the court held that "the exemption from liability for using a person's identity for a non-commercial purpose, including in a news or public affairs account is applicable here. Plaintiff's prior litigation is a matter of public record and public interest" and, as a result, "Plaintiff's identity is not being used for a 'commercial purpose'" *Id.* at *4. The same is true here.

Perhaps anticipating the problems with their claims, Plaintiffs complain that Trellis does not sell single-document access, and instead offers subscription products for access to records across its database and "AI-powered tools." Compl. ¶ 3. But this mischaracterized allegation does not help Plaintiffs. Indeed, in *Nieman*, the court observed that "[u]nder Plaintiff's theory, every person who is involved in litigation who has public court documents that can be accessed for a fee on the Internet by doing a browser search or found by using Westlaw, Lexis, Versuslaw, or any other legal research site can state a claim under the Right of Publicity Act. This cannot be the case." *Nieman*, 2012 WL 3201931, at *4. Here, the Complaint alleges Trellis offers access to the court records *pertaining to the Plaintiffs* for a fee, just as in *Nieman*. *See* Compl. ¶ 21 (containing button to "Download Docket"). Thus, *Nieman* considered and rejected the very claim Plaintiffs attempt here.

**C.** Courts also apply Washington's statutory exemption to bar right of publicity claims. *Haglund v. Sawant*, 2018 WL 2216154, at *3 (W.D. Wash. May 15,

2018), *aff'd*, 781 F. App'x 586 (9th Cir. 2019) (First Amendment and statutory exemption precluded the right of publicity claim because "the use of a plaintiff's identity is not actionable where the publication relates to matters of the public interest, which rests on the right of the public to know and the freedom of the press to tell it").

Moreover, there is additional public interest in Plaintiffs' names, most of which are in public court records because they have filed numerous lawsuits. Apart from the present action, Plaintiffs Brodiski, Trama, and Curley have each filed one or more lawsuits (including as proposed class representatives). RJN ¶¶ 1–3, Exhs. A–C. There is a particular irony about repeat plaintiffs who place themselves in the public eye, then complain that their names show up in search results and legal databases.

The crux of Plaintiffs' grievance is that Trellis sells subscriptions to its database of newsworthy public records. But this is no different than any other news publisher that puts its reporting behind a paywall and sells subscriptions—a common model, including for *The New York Times*, *The Wall Street Journal*, and *Los Angeles Times*. That one using a search engine may seek information on an individual and receive results for paywalled news reports or public records cannot give rise to a right of publicity claim. *See Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 567 (1977) ("[T]he press has a privilege to report matters of legitimate public interest even though such reports might intrude on matters otherwise private … The same privilege exists in cases where appropriation of a right of publicity is claimed.") (citation omitted). The ramifications of Plaintiffs' novel legal theory would be devastating to journalists, other news publishers, and public interest organizations that engage in reporting on court cases, individuals, and businesses, and sell subscriptions to, receive advertising revenue from, or fundraise off such newsworthy reporting.

### 3.   The First Amendment Bars Plaintiffs' Claims.

In its seminal right of publicity case, the Supreme Court recognized that "state-law right of publicity [does] not serve to prevent [a party] from reporting [] newsworthy facts." *Zacchini*, 433 U.S. at 574. Yet this is what Plaintiffs attempt here. Taken to its illogical ends, Plaintiffs' theory would support claims against any news media or legal database that charges for access to reporting or public court records involving an individual. But Plaintiffs' claims "are barred by the First Amendment because reproducing and selling public information obtained in the form of judicial opinions issued in connection with a public court proceeding cannot give rise to liability." *Nieman*, 2012 WL 3201931, at *7 (citing *Rubin v. City of Berwyn*, 553 F. Supp. 476, 479 (N.D. Ill.1982) ("the right to sell and disseminate public information is protected by the First Amendment")).

Likewise, the public interest in furthering access to court records provides constitutional protection against Plaintiffs' claims. *Dora*, 15 Cal. App. 4th at 542 ("the public interest in the subject matter of the [use] gives rise to a constitutional protection against liability"); *Cal. First Amendment Coal. v. Woodford,* 299 F.3d 868, 874 (9th Cir. 2002) ("the First Amendment right of access ensures that th[e] constitutionally protected discussion of governmental affairs is an informed one" and is "necessary to the enjoyment of other First Amendment rights") (citation modified); *see also Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 411 (2001) (rejecting right of publicity claim where defendant "is simply making historical facts available to the public through game programs, Web sites and video clips"). In *Gionfriddo*, the court held that "[t]he recitation and discussion of factual data concerning the athletic performance of these plaintiffs commands a substantial public interest, and, therefore, is a form of expression due substantial constitutional protection." *Id.* at 411. The public interest in new and historical court records compels the same result here.

Because Trellis's publication of and associated subscriptions to access public

records are protected by the First Amendment, Trellis is immune from Plaintiffs' claims. *Cher v. F. Int'l, Ltd.*, 692 F.2d 634, 639 (9th Cir. 1982) ("No action under this [right of publicity] theory will lie, however, solely for publication which is protected by the First Amendment."); *Nieman*, 2012 WL 3201931, at \*2 ("the First Amendment creates a privilege to public matters contained in the public record"); *see also Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975) (The "First and Fourteenth Amendments command nothing less than that the States may not impose sanctions on the publication of truthful information contained in official court records open to public inspection.").

### 4. Trellis's Factual References to Plaintiffs' Names Are at Best Incidental and Non-Actionable.

Even if Trellis used Plaintiffs' names to advertise its subscription products—and the screenshots contained in the Complaint show that Trellis does not—such use would still not support a right of publicity claim because "courts have specifically allowed *incidental* commercial exploitation of a public figure's name and likeness in the context of a publication's advertising activities." *New Kids*, 745 F. Supp. at 1546 (emphasis added) (citation omitted). Washington likewise statutorily exempts "insignificant, de minimis, or incidental use." Wash. Rev. Code § 63.60.070(6).

"[T]he general rule is that incidental use of a name or likeness does not give rise to liability for invasion of privacy by appropriation." *Aligo*, 1994 WL 715605, at \*2. "The rationale for this rule is that an incidental use has no commercial value." *Id.* (citation omitted). Relevant factors include: (1) whether the use has a unique quality or value that would result in commercial profit to the defendant, (2) whether the use contributes something of significance, (3) the relationship between the reference to the plaintiff and the purpose and subject of the work; and (4) the duration, prominence or repetition of the name or likeness relative to the rest of the publication. *Id.* at \*3 (citations omitted).

Here, Plaintiffs allege only the use of their names in connection with alleged

"preview pages" that recite the case name by reference to the parties (*e.g.*, "PYO, ANDREW SUNGEUN VS EOM PYO, VICTORIA SANGEUN") and other non-personal, general case information such as the Case Number, Filing Date, Filing Location, Filing Court, Practice Area, and Matter Type (here, "Divorce, Separation"). Compl. ¶ 21. The case caption does not even reflect Plaintiff's name standing alone—it is accompanied by the counterparty's name. The case caption is thus incidental to an accurate description of the court record at issue and cannot support Plaintiffs' claims. Indeed, there is no practical way for Trellis to accurately publish and describe the court records that a potential user might seek to access without naming the parties to the lawsuit. Yet Plaintiffs seek to punish Trellis's provision of accurate public records in connection with its services—such a radical theory cannot support Plaintiffs' claims. Restatement (Second) of Torts § 652C, Comment d (1997) (an identity is not appropriated "by mere mention of it" nor where "it is published for purposes *other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity*") (emphasis added); *Vinci v. Am. Can Co.*, 69 Ohio App. 3d 727, 729 (1990) (mention of athletes' names "within the context of accurate, historical information" was "purely informational; there was no implication that the athletes used, supported, or promoted the product").

### 1.   Plaintiffs Fail to Allege that Trellis Uses Their Names to Advertise a Separate Product.

"Virtually all right of publicity cases involve the use of a person's name or likeness to advertise a separate product or service." *Brooks v. Thomson Reuters Corporation*, 2021 WL 3621837, *4–5 (N.D. Cal. Aug. 16, 2021) (granting Rule 12(b)(6) motion to dismiss where plaintiff's "name or likeness is not being 'appropriated' and used to advertise a separate product or service"). Plaintiffs attempt to plead around this "separate product" requirement by alleging that the so-called "preview page" may eventually lead to a user being asked to subscribe to Trellis's services. But Plaintiffs propose too attenuated and convoluted of a connection. *See*

Compl. ¶ 23 (describing a back-and-forth process of signing up for a user account and then eventually being taken to a subscription page). And as Plaintiffs' screenshots show, there is no reference at all to Plaintiffs' names on any page that proposes a commercial transaction or that contains Trellis subscription pricing terms. *Id.* Rather, Trellis is doing no more than showing users the type of records that they can access via a subscription, which does not plausibly give rise to a claim. *See Gionfriddo*, 94 Cal. App. 4th at 414 ("The owner of a product is entitled to show that product to entice customers to buy it.").

### 2.    Section 230 Bars Plaintiffs' Claims.

Plaintiffs' claims are based on Trellis's role as an online republisher of court-provided cases, and seek to hold Trellis liable for such third-party-created content. They are thus barred by the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("CDA"). The CDA "immunizes an interactive computer service provider that passively displays content that is created entirely by third parties." *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526, 526–27 (9th Cir. 2017) (citation modified). The CDA defines the term "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server," which covers Trellis. 47 U.S.C. § 230(f)(2). Plaintiffs' Complaint alleges that Trellis is an online website and seeks to hold it liable for content created by third parties—*i.e.*, litigants or courts. The CDA prohibits liability for Trellis under such a theory. *Calise v. Meta Platforms, Inc.*, 103 F.4th 732, 740 (9th Cir. 2024) (noting that courts must "examine each claim to determine whether a plaintiff's '*theory of liability* would treat a defendant as a publisher or speaker of third-party content'") (citation omitted).

Courts have found the CDA bars right of publicity claims in similar cases. In *Callahan*, the court held Ancestry.com immune under the CDA because, "by taking information and photos from the yearbooks and republishing them on its website in

an altered format[, it] engaged in 'a publisher's traditional editorial functions [that] [ ] do not transform an individual into a content provider within the meaning of § 230.'" 2021 WL 2433893, at *5 (citation omitted). Trellis is "not [the] content provider"—the courts are. *Id.* at *5 ("Ancestry obviously did not create the yearbooks. Instead, necessarily used information provided by another information-content provider and is immune under § 230(c)(1).").

The Ninth Circuit instructs that to impose liability in the face of the CDA, the website must contribute "materially" to the allegedly illegal conduct. *Calise*, 103 F.4th at 744. Here, Plaintiffs' theory against Trellis does not support a conclusion that it materially contributed to the content, as the Complaint's screenshot shows. Compl. ¶ 21. Rather, Plaintiffs' names are only shown in connection with the third-party provided content, the court records—they are not extracted, transformed, and repackaged for advertising. In this way, Trellis's republishing presents an even stronger case for CDA immunity than Ancestry's immune conduct where it "republished [yearbook information and photos] on its website in an altered format." *Callahan*, 2021 WL 2433893, at *5; *see also Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1270 (9th Cir. 2016) (Yelp! had Section 230 immunity despite adding a star rating to reviews from other websites). Plaintiffs' claims are therefore also barred by the CDA.

### 3.    Plaintiffs' Unjust Enrichment Claim Falls, too.

Plaintiffs' unjust enrichment claim seeks to hold Trellis liable for the same activities as their right of publicity claims. Because those claims fail, so too does the unjust enrichment claim. *Hawkins v. Shimano N. Am. Bicycle Inc.*, 729 F. Supp. 3d 989, 1029 (C.D. Cal. 2024) ("When an unjust enrichment claim is duplicative of another claim, and the Court has dismissed those other claims, Plaintiff's claim for unjust enrichment fails as well.") (citation modified); *see also De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) ("Because [Plaintiff's] right of publicity and false light claims fail, her unjust enrichment claim fails as well. There being no actionable wrong, there is no basis for the relief.").

### C. Plaintiffs' Claims Should be Struck under California's and Washington's Anti-SLAPP Laws.

The anti-SLAPP laws of California and Washington (the Uniform Public Expression Protection Act ("UPEPA")) apply and support the striking of Plaintiffs' claims. California's anti-SLAPP law, Code of Civil Procedure § 425.16, permits early dismissal of meritless claims "aimed at chilling expression through costly, time-consuming litigation." *See Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001). "To achieve this purpose, courts are directed to 'construe[]' the anti-SLAPP statute 'broadly.'" *Herring Networks v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021); Wash. Rev. Code Ann. § 4.105.901 ("This chapter must be broadly construed and applied to protect the exercise of the right of freedom of speech and of the press, the right to assemble and petition, and the right of association, guaranteed by the United States Constitution or the Washington state Constitution.").

These state anti-SLAPP laws may be brought in federal court in the Ninth Circuit. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) ("Motions to strike a state law claim under California's anti-SLAPP statute may be brought in federal court."); *Project Veritas v. Leland Stanford Junior Univ.*, 2022 WL 1555047, at *4 (W.D. Wash. May 17, 2022) ("UPEPA [Washington's anti-SLAPP law] applies in federal court and will analyze [Defendant's] UPEPA motion … under the standards of Rule 12(b)(6).").[6] Plaintiffs' claims are subject to these anti-SLAPP laws because, as demonstrated above, they are based on Trellis's newsgathering, reporting, and publishing activities on matters of public interest and lack even minimal merit as a matter of law per Rule 12(b)(6).

**Prong One:** ***Trellis's Republication of Case Dockets Are Protected Speech on a Matter of Public Interest***. California's anti-SLAPP law protects "any act in

---

[6] Trellis brings its anti-SLAPP motion as a facial 12(b)(6) challenge. *See Herring Networks*, 8 F.4th at 1156.

Manatt, Phelps & Phillips, LLP
Attorneys at Law
Los Angeles

furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue." Cal. Code Civ. Proc. § 425.16(b)(1). This includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e).

Washington's UPEPA protects:

> (a) Communication in a legislative, executive, judicial, administrative, or other governmental proceeding; (b) Communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding; (c) Exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, guaranteed by the United States Constitution or Washington state Constitution, on a matter of public concern.

Wash. Rev. Code Ann. § 4.105.010.

As explained above at length, Trellis's activities in connection with the gathering and publication of public court records are squarely in connection with a public issue and on issues of public interest. These challenged activities meet the criteria for application of the anti-SLAPP laws, including each of California's four subsections above. *See Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006) (websites that are accessible to the public are "public forums" for purposes of the anti-SLAPP statute). Thus, the anti-SLAPP laws apply to Plaintiffs' claims.

**Prong Two:** ***Plaintiffs Cannot Establish a Probability of Prevailing on Their Claims***. Because Plaintiffs cannot carry their burden to show a likelihood of

prevailing—for all the reasons discussed in this Motion—their claims should be struck under these anti-SLAPP laws. *See Sarver v. Chartier*, 813 F.3d 891, 906–07 (9th Cir. 2016) (affirming anti-SLAPP dismissal of right of publicity claim).

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs' Complaint should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1); dismissed with prejudice under Rule 12(b)(6); and struck with prejudice under California's and Washington's anti-SLAPP laws.

Dated: August 25, 2025

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: /s/ *Nathaniel L. Bach*
Nathaniel L. Bach
Justin Jones Rodriguez
Fraylin F. Gramajo

*Attorneys for Defendant*
TRELLIS RESEARCH, INC.

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendant Trellis Research, Inc. certifies that this brief contains 6,842 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 25, 2025                    MANATT, PHELPS & PHILLIPS, LLP


                                          By: /s/ *Nathaniel L. Bach*
                                               Nathaniel L. Bach

                                          *Attorneys for Defendant*
                                          TRELLIS RESEARCH, INC.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

MEMORANDUM IN SUPPORT OF TRELLIS'S MOTION TO DISMISS AND STRIKE